Case 25-3477, Asif Rehman v. Pamela Bondi, argument not to exceed 15 minutes per side, and counsel you may proceed for the appellant when ready. Good morning. Good morning, your honors. And may it please the court, we're reserving three minutes for rebuttal. My name is Duffy Trager, attorney for Asif Rehman, a Pakistani national who is 71 years old, suffers from a serious heart condition, while in the U.S. has placed three kids in medical school and created a thriving business. Mr. Rehman, the petitioner, requests that this court remand proceedings for his ability to request anew his claim without the burden of a record tainted by prior counsel, who neither the respondent nor the Board of Immigration Appeals contest was ineffective. The reason for remand are the following. First, Mr. Rehman established prima facie eligibility for the relief sought, thereby warranting a motion to remand grant. Second, Mr. Rehman established there was a reasonable probability under this court's precedent that but for the ineffective assistance of counsel, the result could have been different. And third, there were various issues that were raised, but the Board never addressed them. Beginning with the first point of prima facie eligibility for the relief sought, prima facie evidence is not relief in chief. It is not sufficient to establish the claim itself. Prima facie is Latin for at first sight. It's much lower than that. It's an initial determination about whether there is enough here to make a colorable claim. And that's what's required in a motion to remand or a motion to reopen. Let's just talk a little bit about your theory of persecution, because that is relevant to the prejudice. It's relevant to the threshold claim. I mean, it's one incident in the past where problem solved, I mean, harrowing, I'm sure, but problem solved and the government even gets involved and identifies. So that's that's usually pretty good news when it comes to fears of persecution. And then the future persecution is because what he's had a role in the government and by definition that makes him at risk. A review of the record in its totality, Judge, indicates the following. There were there was the situation of the attempted kidnapping of his daughter where the explicit reason was to get him to back off of his investigations. There were death threats. I mean, the government is involved. The government gets involved in helping to shut this down, right? I believe it was Mr. Raymond and a colleague. But insofar as that. I mean, the risk persecution is government persecution. That's the problem.  But the individual that attempted to kidnap his daughter was admitted to being a military officer. So thereby it was a government officer. So as a threshold matter, that that attempt was by a government officer. Additionally, there were death threats against him. This court's precedent has found that if death threats are imminent and menacing in nature, that can be enough for past persecution. This situation galvanized Mr. Raymond and his family to have to be moved to France for a period of time out of fear of concern for their safety. So a reading of the record does establish that there was past persecution here or at a minimum prima facie eligibility of past persecution, which is what we need for the motion to remand. If there is a establishment of that fact, then there is a rebuttable presumption in favor of a well-founded fear of future persecution, which the government under asylum law only rebuts based on changed circumstances or reasonable relocation. Again, the record as a whole indicates there is no changed circumstances. If anything, things have worsened. The record contains evidence about the fall of the Afghani government to the Taliban and how there was much spillover into Pakistan during that period of time. Additionally, the record reflects that security forces regularly target people for brutality and the death penalty. So these issues are reflected within the record itself. And because it is the Pakistani government for which the ISI is throughout the country, there is no reasonable relocation either. Government forces kidnapped and forcibly disappeared individuals in, quote, nearly all areas of the country. That's at AR 504. So the rebuttable presumption is not rebutted here. But even if it were, there is establishment at a prima facie level, at a minimum, of future persecution. For one, Mr. Raymond was found credible. He discusses how in the fall of Afghanistan, there still was Taliban support. The letter writers, his former military colleagues who submitted affidavits on his behalf, which were submitted in the motion to remand to the Board of Immigration Appeals, discuss the same. The Congressional Research Service, which is all.  Remind me of this fact point that I don't remember. When he moved to Paris, did the government facilitate that or was that on his own initiative? Yes, I believe his testimony reflects that his higher up military officer said he and his family needed to move out of danger to him. Well, even when he moved to Paris, though, didn't he return to Pakistan and stay for about two years before he came to the United States? He did briefly to get his affairs and orders. For two years?  By that point, his children were living in the U.S. He had secured their safety and ultimately, yes, he did decide to go and spend the rest of his life here. And was there, I just don't remember from the record, was there evidence of threats to his safety during that, I think it was 2005 to 2007 period? I don't think the record speaks to that, Your Honor, but we don't have to rely entirely on that because there is evidence establishing prima facie eligibility of future persecution as well. In an instance that even the Board of Immigration Appeals noted was troubling, one of the military officers who writes an affidavit on his behalf and is submitted with the motion to remand talks about an instance of suspicious individuals demanding to speak with him, wanting to know when he's coming back to Pakistan as recently as 2019. We don't even know that they're involved with the government, right? This could be like somebody he owed a debt to or, you know, like those suspicious individuals, it just seems a little ephemeral because we aren't sure who they are. Right. Right. Well, ultimately, the Board of Immigration Appeals didn't seriously contend with that issue. They discounted the affidavits simply on the basis of the fact that these instances rose in a military context, thereby they were not relevant, essentially, to asylum. But that misreads this Court's precedent. This Court has allowed for mixed motive cases where there exists simultaneously two things. In this case, Mr. Raymond's political opinion simultaneously with his military service. This Court, in a script called the Bar, found that a situation such as this, you have two things, inextricably intertwined, being two sides of the same coin. In script call, that involved a civil servant who refused to take inflated bribes, basically. And the Court found in that case that it was not just about the pecuniary interest, it was also his political opinion. So too here, we have Mr. Raymond's political opinion in conjunction with his military service. Also as on that point, the Board erroneously cites the matter of Fuentes. Fuentes involved direct confrontation between El Salvadoran military and guerrilla fighters. This was not him fighting against his officers, this was him targeting, taking it upon himself based on his political opinion to seek out these individuals. And one more point on that, the record does reflect that he extended beyond his military duties, making this not a strict military case and thereby it's not relevant for asylum. The record reflects that he sought to rid, quote, overlapping seminaries and schools which were independent of the Pakistani military. And then he extended out beyond his own jurisdiction, quote, that's at AR 384 through 385. And two of the affidavits that were submitted with the motion to remand corroborate that. On the issue of, so based on that, there is prima facie eligibility for the relief sought which is the baseline standard for a motion to remand and it was erroneous for the Board to deny and essentially discount those affidavits that were submitted. That leads us to sort of the corollary of a reasonable probability of a different outcome, the prejudice standard. The Board denied the appeal as well as the motion to remand in a single order strictly based on prejudice. As it pertains to prejudice, on the corroboration element alone, corroborating evidence was submitted. This was submitted in the motion to remand. This is precisely the type of evidence that the immigration judge wanted to see in his denial. The immigration judge says, quote, there is no letter or affidavit from any of former military associates corroborating his testimony. And that's at 324, the applications all fail for lack of proof, 325. The immigration judge went on to say, based on the testimony alone, while credible, this is not enough. Well, of course it wasn't enough because prior counsel never made the obvious assumption. Indeed, he told him he didn't need it to get corroborating evidence, which is what the law says. I think on the motion to remand. Okay, but that goes to the performance prong. Counsel should have told him you need corroboration, but how does that satisfy the prejudice prong? I think the problem here that the BIA found was that the affidavits that were submitted were not sufficient. You sort of said, well, he submitted affidavits, so that satisfies your burden. These were detailed affidavits, Judge. A close reading of the board's decision is they essentially dispensed with them on the basis of, well, military service and harm that comes from that is inherently not sufficient for asylum. Skripkov tells us that's a misreading, that's overgeneralizing the situation. As it pertains to the affidavits themselves, this court's precedent in Trujillo-Diaz versus Sessions found that the board improperly discredited an affidavit from Trujillo's father on the basis that it was about money, sort of the same argument. Is it money and a protected ground, or is it just money? Same here. Is it political opinion and military service, or just one or the other? In Trujillo and other cases, this court has said that barring the Board of Immigration Appeals making a finding that the affidavits are inherently untrustworthy, they deserve to be treated as fact. If that's true, and the board made no such finding that they're inherently unbelievable, they dispense with them on the basis of, well, military service doesn't get you there, then the facts are that his daughter was almost kidnapped, he had to be moved with his family from Pakistan, yes, he returned Judge Davis, but ultimately to settle his affairs and get out. He didn't return with his kids, and then there have been continued instances that raise the concern over future harm, namely, 2019, people asking for him at his mother's funeral, where under Islamic law, he would be expected to attend, the fall of Kabul in approximately 2021, which also implicated the one-year deadline, which was also a reason for the judge to deny the case. An additional final point, aside from prima facie eligibility- Can we go back to the funeral? That seems to be almost your strongest point, but again, we don't know who those people are either. Yeah. Or just some people showed up at his mother's funeral asking for him. Yeah. And I think that's something- What do we- Yeah. I think that's something that would be better served through testimony via remand, Judge. The immigration court allows for WebEx. I've had witnesses from outside the US that's available, not with a paper record, not with affidavits on a motion to remand, but that would be quite relevant. You're absolutely right. But your motion to remand is based upon the ineffective assistance of counsel, for which you have to show prejudice, and so it sounds like you're saying, remand it so I can send it back and I can show the prejudice? I don't think it works that way. No, Judge Davis, respectfully, and I see my time has expired, I'll go ahead and answer. We believe there are multiple instances of prejudice here, but the standard is a reasonable probability of a different outcome. It's not relief in chief, which appears to be what the Board of Immigration Appeals and perhaps Respondent are conflating it to. What is the reasonable probability? Yes, that is what prejudice is. What is the reasonable probability here? The reasonable probability here is the concern that there have always been, in the words of the affidavit writers, the people that Raymond targeted still hold significant power and are still involved in the ISI and other parts of the government. But we don't have any, well, the BIA, and I didn't hear any, you didn't point to any evidence that those people who were making, well, they weren't even making threats, who were asking about him at the funeral, for instance, were those same individuals, right? Right. The letter writer was unclear on who those individuals were. And again, that's something that could be fleshed out further on a remand, but the baseline is the affidavits explicitly state these people continue to want to harm him, these people have significant power in the country, and with the fall of Kabul, many of these issues have gotten far more dangerous. All right. You'll get your full rebuttal from the government. Good morning. Good morning, Your Honors. My name is Kose Ugamori, and I represent the United States Attorney General in this case. This petition for review should be denied for two reasons. As Petitioner's argument just demonstrated, he does not challenge the fact that he's forfeited any challenge to the Board's dismissal of his appeal. And what's remaining for this court's decision is whether the Board abused its discretion in denying remand in this case. And the government's position is that it hasn't. The Petitioner has failed to show prejudice resulting from the alleged ineffective assistance of his former counsel, and he's also failed to establish any error in the Board's decision otherwise. So with respect to the motion to remand, I think it's clear from the record here, and Petitioner doesn't dispute either in his opening or reply briefs, that the harm he suffered or experienced in Pakistan did not rise to the level of past persecution. So that's also not at issue. And so we can now focus just on the likelihood of future persecution. And on that part, Petitioner, again, fails to show that the Board abused its discretion in considering the new evidence, as well as the evidence that was presented below before the immigration judge, that he, a reasonable likelihood of showing eligibility for asylum withholding and cap protection. So Petitioner testified, for example, that he was never personally threatened. He was never injured or harmed in any way. There was that one instance where his daughter, there was an attempted kidnapping of his daughter, but that attempt was foiled. And the individual who was involved, the individuals who were involved, were also arrested in that case. Oh, well, wasn't the individual involved connected to the government somehow? So he did allege that, according to his testimony, that individuals he had expelled from the Air Force had hired somebody or paid somebody within the Air Force to commit this crime. So yes, there was a soldier that was involved, but that soldier was arrested. And subsequently, the Petitioner asked for a different assignment, which he did receive immediately. In 2002, the same year that the attempted kidnapping of his daughter was foiled, he was assigned, reassigned to a post in Paris. So there's no evidence here showing that the government was unable or unwilling or anything along those lines. The government's changed. It's not the same government anymore when it comes to the future persecution problem. Right. But it's not the same government, and he's no longer in power as a base commander. But he hasn't shown in his motion to remand that the current government is in such a condition that there is a likelihood of his persecution in the future. So the Petitioner includes three affidavits. And as your honors have noted already, the three affidavits don't identify really who he's afraid of. He's never identified a particular person. He has this broad, vague claim that he's expelled a bunch of people and therefore a lot of people are angry at him. But he doesn't identify who these people are. The affidavits themselves are actually inconsistent with his own claim. The affidavits claim that he and his family are in danger if he were to return to Pakistan. But his testimony was that his children have returned to Pakistan several times for a month each time. His ex-wife continues to live there. And then he also, I believe, testified that, or maybe it might have been in his declaration, that he feared danger for his mothers, nieces, and other family members. But there's no testimony at all about those individuals being harmed in Pakistan. So the affidavits not only are vague and insufficient to establish an abuse of discretion in the board's decision, but it also appears to undermine Petitioner's theory of future persecution or torture in this case. What about Mr. Raymond's argument that the BIA failed to address some of his other substantive arguments and so the record is not developed enough for us to make a decision on those? The widow petition and his equities argument, is that anything that we should be concerned about? And if not, why not? So this court shouldn't be concerned with that because if you look at his motion to remand, he didn't ask for any relief based on the widow petition. In fact, in his motion to remand, he says he's ineligible for it and therefore requests a hearing on his application for asylum. So he's never requested any kind of relief based on the widow exception. So the board didn't have to address it. Likewise, with respect to his claim of voluntary departure, he says that his prior counsel was ineffective because he had obtained the privilege of voluntary departure without his consent. He makes that argument, but later on in the motion to remand, he insists that he retain that privilege. So it's not clear what he was complaining about. What appears clear is that these arguments about prejudice is really going to the discretionary aspect of a motion to remand. So I think with the widower petition, with respect to the voluntary departure, or his showing of other equities, he's showing that he was the victim of ineffective assistance of counsel, and that if the court were to find that he were pre and foster eligible for asylum withholding in CAT, well then the board can consider the next step in the analysis is whether the motion to remand should be granted in the exercise of discretion. I think those additional widower petitions and voluntary departure, it would have been relevant to that stage of the analysis, but we never get there because the board found no pre and foster eligibility in this case. And as this court is held in Alabani v. Gonzalez, if you fail to show pre and foster eligibility for the requested relief, then you cannot show prejudice in support of an application for ineffective assistance of counsel. So in sum, Your Honor, again, first and foremost, the petitioner does not challenge the part of the board's decision dismissing the appeal. And second off, the board did not abuse its discretion in denying the motion to remand in this case, and did not otherwise err and address all the necessary elements of the remand. For those reasons, the government requests that this court deny this petition for review. Thank you. Thank you. Gregor, you've got some rebuttal. I'll start with Judge Davis's question about the failure to address various points, and I think that's relevant here. On the unilateral acceptance of voluntary departure, the Board of Immigration Appeals never addressed it, and that's problematic. They have a published case, Madurov's Jemuska, it's cited in our reply brief, that dealt with this exact issue, attachment of the 10-year bar for failure to leave on voluntary departure. In that case, the board sent the case back because they found that voluntary departure was not voluntarily accepted. In this case, the record is clear. The immigration judge asked Mr. Clare, does your client wish to accept voluntary departure? Clare says yes without conferring with Raymond, and then Clare proffers the statutory eligibility for voluntary departure. The board never addressed that issue, they never explained why that case was, that published precedent for them was irrelevant, could not be followed. That's error. I'm not quite 100% sure I understand that. You're saying this is a situation where the right belongs to the client and not to counsel? Mostly we allow counsel to speak for clients. I think that's true, but in an ineffective assistance of counsel where it's not voluntary in nature, I don't think we allow that to happen. I think that was the point of this board case. Voluntary departure is essentially an application for relief. Someone asked for that application for relief, a counsel, without consulting you, yes, that's a problem. But it's doubly a problem because the board never touched it. This court has... I didn't understand that we were couching this in terms of the ineffective assistance claim. I thought you were saying that there was an error by accepting counsel's representation of what his client's wishes were. No, the issue is counsel never talked to his client about it. I think that creates a friction that you're sort of identifying. The respondent's position is, hey, ultimately on this record it's not enough for asylum so they lose. First off, I think they're conflating the standard for relief in general versus prima facie eligibility or reasonable probability. But there are these standalone claims that the board has to contend with as well. This court's precedent has plenty of acknowledgments that we do not make interpretive leaps on the board's behalf. We can't fill in the gaps for them. This is a clear situation of they didn't address it, it was properly raised, and it has bearing in law. On the issue of, well, we're complaining about voluntary departure now. Under the regs, the 10-year bar has not attached at this moment. Well, the 10-year bar will only attach if he violates, if he doesn't voluntarily depart, so it's not even... It's not an automatic thing. I don't know how you get prejudice out of that. Sure. Under the regs, Your Honor, the 10-year bar will not attach if the case is remanded. So there will be no 10-year bar if the case is remanded. That's my read on the... There also will be no 10-year bar if he doesn't violate the provision. Sure. But the provision was given to him by ineffective assistance of counsel who never talked to him about it. He didn't get what we think would be voluntary in knowing. I see my time has expired. I'm happy to answer any other questions.  Thanks. For the foregoing reasons, we request that you remand. Thank you. Thanks to both of you for your helpful briefs and arguments. We appreciate it. The case will be submitted.